UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL M. COLEMAN<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Acting Commissioner of Social Security<br><br>        Defendants. | Civil No. 11-0115 WQH (NLS)<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**I.     INTRODUCTION**

Carol M. Coleman ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for disability insurance benefits. This case was referred for a report and recommendation on the parties' cross-motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After careful consideration of the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** and that Plaintiff's cross-motion for summary judgment be **DENIED.**

**II.    PROCEDURAL HISTORY**

Plaintiff applied for SSI benefits on September 21, 2007 [Administrative Record ("AR") at 132-34]. Plaintiff alleged she became unable to work as of March 2, 2007 due to "neck and back pain; Epstein Barr Virus; Depression." [AR 74.] The Social Security Administration determined Plaintiff was not disabled and denied her benefits. The claim was denied initially on December 21, 2007, and

upon reconsideration, on March 27, 2008. [AR 18, 74-78, 80-84.] An Administrative Law Judge ("ALJ") conducted a hearing on November 5, 2008 where Plaintiff was represented by an attorney. [AR 18.] Impartial medical expert Eric C. Yu, M.D. and impartial vocational expert Katie Macy-Powers testified at the hearing. [AR 18, 46-56, 57-65.] On November 25, 2008, the ALJ issued a decision finding that Plaintiff met the insured status requirements, had not engaged in substantial gainful activity, and has "the following severe impairments: cervical and lumbar degenerative disc disease (20 CFR 404.1521 *et seq.*)" [AR 20.] The ALJ also found that the Plaintiff's "mental impairments of anxiety related disorder and affective mood disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." [AR 20]. At the next step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526.) Next, the ALJ determined that Plaintiff "has the residual functional capacity to perform the full range of light work. The claimant could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours of an eight-hour workday and sit six hours of an eight-hour workday as defined in 20 CFR 404.1567(b)." [AR 21.] The ALJ also found that Plaintiff was capable of performing past relevant work as a project manager and an office manager. [AR 24]. Finally, the ALJ concluded that Plaintiff had not been under a disability from March 2, 2007 through the date of the decision, November 25, 2008. [AR 24.]

Plaintiff requested review of the ALJ's decision and on November 23, 2010, the Appeals Council denied Plaintiff's request for review, making the November 25, 2008 ALJ decision the final decision of the Commissioner. [AR 1.]

### III.   ANALYSIS

#### A.   Standard of Review

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C.A. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means

1  "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
2  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If the evidence is susceptible to more than one
3  reasonable interpretation, the agency's decision must be upheld. *Batson*, 359 F.3d at 1193. Further,
4  when medical reports are inconclusive, questions of credibility and resolution of conflicts in the
5  testimony are the exclusive functions of the agency. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
6  1989). Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the
7  final agency decision reviewed by the court. *See Batson*, 359 F.3d at 1193 n.1.

### B.  The Five Step Sequential Evaluation

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C.A. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson*, 359 F.3d at 1194. First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the applicant's impairment is severe, the ALJ must then determine whether the impairment meets or equals one of the "Listing of Impairments" contained in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant can no longer perform past relevant work, the ALJ at step five of the evaluation must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

//

**C.     Evidence in the Record**

     1.     Plaintiff's Testimony

In the Disability Report (Form SSA-3368) Plaintiff stated that she cannot: 1) drive "for any length of time"; 2) stand for "more than 15-20 minutes"; 3) walk for "any length of time." [AR 165.] Plaintiff also asserted "severe fatigue." *Id.*  Plaintiff claimed:

> I cannot lift anything, have a hard time even bending over, can't hold a phone for more than 5-10 minutes without severe numbness in my arms, can't tolerate sitting in a car driving for long periods of time (commuting is a real problem), can't stand for anymore [sic] than 15-20 minutes without having to sit and rest, and I am in constant pain and severe fatigue keeps me from functioning as I used to.

*Id.*

At the hearing, Plaintiff testified that she falls "[a]nytime I walk more than a block." [AR 36.] Plaintiff also testified that she had a cervical fusion surgery in February of 2008 and that her neck is "probably 50 percent worse than before I had surgery." [AR 37.] Plaintiff also testified that she has "headaches constantly, they never go away, but I have severe migraines that require I take medication probably three to four times a week." [AR 39.] Plaintiff next testified that she has been receiving mental health treatment and that she had received a diagnosis of severe depression and signs of PTSD. [AR 40].[1] When asked what prevents her from working, Plaintiff responded that Dr. Alleyne "suspects that I have carpel tunnel in both arms, also lymphodema in my right arm." [AR 42.]   As to daily activities, Plaintiff stated: "I can do laundry, I don't do dishes, that's too much my arms go dead and I can't stand there that long."  Her sister does the dishes and her son reaches for things that are over her head, that she cannot bend over if she drops something because she can't get back up. [AR 43.] Plaintiff stated that she has "plenty of hobbies but I don't do any of them anymore." *Id.*  Plaintiff also stated that she has "severe fatigue". *Id.*  Plaintiff also admitted accepting legal guardianship of her 16 year old nephew and claimed that the nephew helped her along with her son.

     2.     Dr. Yu.

Medical expert Dr. Yu testified at the hearing that Plaintiff:

> has the following conditions based on the medical records reviewed.  Number one is cervical degenerative disc disease of the spine, and this is supported by her MRI exhibit

---

[1] Plaintiff points to no medical records in evidence that support this testimony.

> 4F eight to nine. Number two, she also has degenerative disc disease of her lumbar spine, status codes fusion and she was seen by a spine surgeon at UCSD 20F, November 28, 2005 a Dr. Lee, and at that time Dr. Lee reported that her neurologic examination at that time which is 20F page one was normal. So that's number two. . . . the cervical spine and lumbar spine rises to a severe impairment judge.

[AR 50-51.][2] Dr. Yu reviewed the report of Dr. Sabourin, who examined Plaintiff at the request of the Department of Social Services. Dr. Yu testified that Dr. Sabourin concluded, based on his examination, that Plaintiff "has a restriction to a light category" in December of 2007 and that her condition worsened in February 2008 and Plaintiff was then restricted to work in the sedentary category. [AR 51-52.] Dr. Yu stated that Plaintiff had "exertional limitation of occasional for climbing, balancing, stooping, leaning, crouching and crawling." [AR52-53.] Dr., Yu also limited Plaintiff's fingering and handling to "frequent" based on her not yet established carpel tunnel syndrome diagnosis and found environmental limitations in that Plaintiff should avoid unprotected heights, cold and damp temperatures, and vibrating machines, to a moderate degree. Dr. Yu stated that he based the drop to sedentary "entirely on her subjective complaints." [AR 52.] On cross-examination by Plaintiff's attorney, Dr. Yu stated that he accounted for Plaintiff's limitations on neck flexion or rotation, by "dropping her level from light to sedentary." [AR 55.] Dr. Yu also clarified that his conclusion was based on Plaintiff's orthopedic conditions and not on Plaintiff's complaints of headache or fatigue or her epstein barr. [AR 56.]

### 3. Dr. Sabourin

On December 4, 2007, Dr. Thomas J. Sabourin, an orthopedic surgeon, examined Plaintiff and produced a written report, but did not testify at the hearing. Dr. Sabourin's general impression was that Plaintiff "is a well-nourished, and well-developed female in no acute distress. She is alert and oriented as to time, place, and person." [AR 343.] Dr. Sabourin stated plaintiff "sits and stands with normal posture. There is no evidence of any tilt or list, and the claimant sits comfortably during the examination. In obtaining the upright position, the claimant rises from a chair without difficulty. The gait is normal. She has no assistive devices. Toe and heel walking are within normal limits." Dr. Sabourin noted that the range of motion in the shoulders, elbows, wrists, hands and fingers, hips, knees,

---

[2]Dr. Yu mentioned the carpal tunnel diagnosis, but noted that it was only two months old and was not established enough to be considered.

ankles, and feet were all "grossly normal and painless." [AR 343-344.] Dr. Sabourin also found Plaintiff's "motor strength throughout the upper and lower extremities bilaterally (5/5)." [AR 345.] Dr. Sabourin found "cervical and lumbar problems", and concluded that Plaintiff "could only lift or carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk up to six hours of an eight-hour workday and sit for six hours of an eight-hour workday. Push and pull limitations will be equal to lift and carry limitations. She could climb, stoop, kneel and crouch only occasionally. She does not have manipulative limitations at this time." [AR 346.]

### 4. Dr. Alleyne

The ALJ conducted a hearing in Plaintiff's case on November 5, 2008. Over a year later, on November 23, 2009, Plaintiff submitted medical reports from Dr. Alleyne dated from January 17, 2008 through August 18, 2008. The Appeals Council considered the medical records, but found that they did not render the ALJ's decision contrary to the weight of the evidence.

The earliest report, dated January 17, 2008, states that Plaintiff was experiencing numbness and tingling in her upper extremities; had multilevel degenerative disk disease. [AR 574.] The treatment plan is for Plaintiff to undergo surgery. [AR 576.] Dr. Alleyne reviewed an MRI scan completed on September 19, 2006 [AR 574.] Dr. Alleyne also conducted a physical examination that

> reveals a very pleasant 51 year-old female ... in a moderate amount of discomfort while sitting for his [sic] history and physical exam. Reflexes are absent for biceps, absent for brachioradialis and 1+ for triceps on the right. On the left biceps absent, brachioradialis 1+ and triceps 1+.
>
> Motor strength in the upper extremity for handgrip, writs extension, writs flexion, biceps, triceps and deltoid were all 5/5 on the right. Intrinsics 4/5, wrist extension 4/5, wrist flexion, 4+/5 and triceps 4/5. The remaining portion of the examination is 5/5.

[AR 575-76.] The report also indicated that Plaintiff's "cervical range of motion is restricted" and that "lumbrosacral motion was restricted." [AR 576.]

Included in the medical records was a letter written by Dr. Alleyne dated February 1, 2008. Plaintiff claims Dr. Alleyne stated she "could not lift any weight, and could not perform desk work or repetitive work." [Docket No. 12-1, Mtn for SJ at 4.] The letter actually states:

> For quite some time, Ms. Coleman has been unable to perform her regular work duties and is unable to sit or stand for more than 20-30 minutes at a time. She has severe nerve

> damage and this condition inhibits her ability to lift any weight, stand for any period of time, or sit at a desk and do repetitive work.

[AR 605.] Dr. Alleyne does not provide any definition of "quite some time" or of what he understood Plaintiff's "regular work duties" to include. Similarly, Dr. Alleyne does not quantify the extent to which Plaintiff's condition "inhibits" her ability to lift, stand, or sit. Similarly, Dr. Alleyne does not explain in this letter whether his conclusions are based on any clinical testing or not.

On February 11, 2008, Dr. Alleyne dictated a report. [AR 594-596.] Plaintiff reported to Dr. Alleyne that she "has now fallen on a couple of occasions." [AR 594.] Dr. Alleyne found Plaintiff's "motor strength in the upper extremities for hand grip, wrist extension, wrist flexion, biceps, triceps, and deltoid on the right were 5/5. On the left, intrinsics 4/5 wrist extension 4/5 wrist flexion 4+5, and triceps 4/5  Remaining portion of the examination was 5/5." [AR 595.]

On February 12, 2008, Dr. Alleyne operated on Plaintiff performing an Anterior cervical diskectomy C4-5, C5-6, C6-7; Partial corpectomy C4-5, C5-6, C6-7, PEEK cages C4-5, C5-6, C6-7, and Trestle plate fixation C4 to C7. [AR 591.]

Dr. Alleyne examined Plaintiff on February 25, 2008 and found her motor strength 5/5 and that the fusion "appears to be incorporating quite nicely." [AR 570.] Dr. Alleyne saw Plaintiff again on July 17, 2008. [AR 559-560.] His examination revealed motor strength of 5/5 and that the fusion "appears to be incorporating quite nicely." *Id.* Plaintiff reported numbness and tingling in both hands that wakes her up at least 4-5 times per night.

Plaintiff was evaluated by Dr. Alleyne again on April 17, 2008. [AR 564-565.] Plaintiff stated "she is doing quite well having only minimal discomfort into her neck and some occasional tingling in her right hand. She is very pleased with her outcome and has been noticing that she is not able to work her regular duties at this point in time because of her chronic fatigue." [AR 564.] Dr. Alleyne's examination revealed "Motor strength in the upper extremities is 5/5 for handgrip, wrist extension, writs flexion, biceps, triceps and deltoid."

On August 18, 2008, Dr. Alleyne again saw Plaintiff. His report reflects that Plaintiff "states that the left leg has buckled on her on a few occasions, and she has not been able to walk long distances." [AR 555.] Dr. Alleyne found: "Motor Strength 5/5 on left. On right tibialis anticus 4+/5.

The remaining portion of the examination is 5/5. [AR 555.]

None of the submitted records from Dr. Alleyene contain Plaintiff's assertion at the hearing that she felt 50% worse after the surgery on February 12, 2008.

### 5. Ms. Katie Macy-Powers, Vocational Expert

The ALJ also took the testimony of vocational expert, Ms. Macy-Powers, who considered Plaintiff's ability to do her past relevant work. Ms. Macy-Powers found that Plaintiff could do her past work as an interior designer from March 2007 thru February 12, 2008, but not after because the interior designer is classified as "light" as opposed to sedentary and required frequent handling and fingering. [AR 59-60.] Ms. Macy-Powers opined that Plaintiff could perform her past relevant work as a project manager and as an office manager for all relevant time periods. *Id.* When cross-examined by Plaintiff's attorney, Ms. Macy-Powers opined that Plaintiff's neck issues would not prevent her from performing as a project manager or an office manager. Ms. Macy-Powers, however, opined that if Plaintiff were limited to simple repetitive tasks due to a combination of either depression or interference with concentration due to pain, she could not perform either job. Ms. Macy-Powers also opined that if she accepted Plaintiff's testimony of having migraine headaches three to four times a week lasting seven to eight hours a day, then Plaintiff would not be able to work. [AR 65-66.]

**D.    Assertion of Error**

In challenging the ALJ's denial of benefits, Plaintiff first asserts the ALJ erred by failing to: 1) give specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physician; and 2) give clear and convincing reasons for rejecting the testimony of Plaintiff. The Court will address each assertion in turn.

### 1. Rejection of Plaintiff's Treating Physician

#### a. Legal Standards

Where a treating doctor's opinion is not contradicted by another doctor, the commissioner can only reject the treating doctor's opinion for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) Where the treating doctor is contradicted by another doctor, the commissioner must provide "specific and legitimate" reasons based on "substantial evidence" in order to properly reject a treating physician's opinion. *Id.* at 830-31. The opinion of an examining physician alone can

constitute "substantial evidence" because it rests on an independent examination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Id.*. Finally, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008.)

In this case, Plaintiff did not submit the records of her treating physician, Dr. Alleyne, to the ALJ. Thus, the ALJ could not have provided his reasons for rejecting the opinion. The Appeals Council must consider additional evidence submitted if it is "new and material." 20 C.F.R. 404.970 (b). If the evidence is new and material, the Appeals Council should consider the entire record, including the new evidence, to determine if the ALJ's findings are "contrary to the weight of the evidence." *Id.* Evidence is material under section 405(g) if it bears "directly and substantially on the matter in dispute" and there is a "reasonable possibility" that the new evidence would have changed the outcome. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)(quotations and citations omitted).

Here, the Appeals Council did consider Dr. Alleyne's records and opinions and found that the additional information did not "provide a basis for changing the Administrative Law Judge's decision." [AR 2.] Accordingly, this court must consider the new evidence and evaluate the record as a whole. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).[3] Plaintiff argues: "The Appeals Council had the obligation to determine whether the evidence presented to it changed to weight of the evidence. 20 C.F.R. § 404.970(b)." (MSJ at 8:1-3). This is not an accurate statement of the law. 20 C.F.R. §

---

[3]The Court is aware of Judge Rymer's concurrence in *Angst v. Astrue*, 351 Fed. Appx. 227, 229-30 (9th Cir. 2009), stating that a claimant who appeals an ALJ's decision based on evidence not presented to the ALJ can only seek remand to the ALJ to consider the new evidence and that the claimant must show good cause for the delay in presenting the evidence and a reasonable probability that the new evidence would change the outcome. Judge Rymer's formulation, however, is in direct contradiction with *Ramirez v. Shalala*, 8 F.3d 1449, 1551-52. (9th Cir. 1993), which states that the district court should consider any additional material submitted to the Appeals Council. *See also, e.g. Harman v. Apfel*, 211 F.3d 1172, 1190 (9th Cir. 2000)("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 at n.2 (9th Cir. 2007). The Court is also aware that *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) has been cited as requiring good cause for delay and a reasonable probability of changing for a district court to consider evidence presented for the first time to the Appeals Council. *Mayes*, however, specifically states: " We need not decide whether good cause is required for submission of new evidence to the Appeals Council, as Mayes conceded in her briefs that good cause was indeed required." *Mayes*, 276 F.3d at 460, n.3.

404.970(b) provides that the Appeals Council "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Thus, the Appeals Council had an obligation to determine whether the new evidence rendered the ALJ's decision against the weight of the law, not whether it "changed the weight of the evidence."

### b. Dr. Alleyne's Report Was Contradicted By Another Doctor

Plaintiff argues that Dr. Alleyne's report is entitled to "controlling weight" because it is "not inconsistent" with other substantial evidence of record.  Defendant disagrees, asserting that Dr. Alleyne's new report "is wholly inconsistent with the findings of Drs. Sabourin, Lizarraras, as well as Dr. Yu, who testified at Plaintiff's hearing that she could perform light work before her surgery, and sedentary work thereafter. (AR 54.)"  [Cross Mtn at 7.]  Plaintiff responds that the "not inconsistent" standard is met where, as here, the treating physician and other evidence agree on the underlying condition but differ only as to the ability of the patient to function.  [Opp/Reply at 5, citing *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).]  Claimant overstates the holding of *Orn*.  In that case, the Ninth Circuit held:

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' . . . By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'  Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered.

*Orn*, 495 F.3d at 632 (citations omitted.)

Dr. Sabourin examined Plaintiff, performing, *inter alia*, an Orthopedic Examination, Cervical Spine Examination, Lumbar Spine Examination, Extremity Examination, a Neurological Examination. In short, Dr. Sabourin based his opinion on his own, independent clinical findings.  Thus, as argued by the Commissioner, his findings constitute "substantial evidence" under the *Orn* standard.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)(opinion of examining doctor "alone constitutes substantial evidence, because it rests on his own independent examination.")  Accordingly, the Commissioner was not required to give Dr. Alleyne's report controlling weight.

         c.      The Appeals Council Was Not Required to Make Specific Findings in Rejecting Dr. Alleyne's Report

Under the 20 C.F.R. § 404.970:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §404.970(b). Claimant argues that the Appeals Council, when reviewing new evidence from a treating physician, must provide specific and legitimate reasons for rejecting the new evidence. (MSJ at 9, citing *Barerra v. Astrue*, 2009 WL 2731259 at *7 (D. Or. 2009). The Commissioner does not address the issue of whether the Appeals Council is held to the same standard in rejecting new treating physician evidence as the ALJ is held to in rejecting the same evidence when presented at that level.[4]

The Ninth Circuit addressed this question recently in a case where a claimant asserted that the Appeals Council improperly rejected newly presented evidence from a treating physician. The claimant asked the court to credit the evidence as true and remand the case with instructions to award benefits. The Ninth Circuit stated the well settled rule that it lacks jurisdiction to review the Appeals Council's decision to deny a request for review. The Ninth Circuit then explained it has jurisdiction to remand with instructions to award benefits:

> Contrary to the Commissioner's assertion, Taylor is not effectively asking for a 'ruling that the Appeals Council must provide [a] detailed rationale whenever faced with new evidence.' If he were, Taylor's request would be barred by Gomez v. Chater, where we held that 'the Appeals Council [was] not required to make any particular evidentiary finding' when it rejected evidence from a vocational expert obtained after an adverse administrative decision. 74 F.3d 967, 972 (9th Cir. 1996).

*Taylor v. Commissioner of Social Security Administration,* 659 F.3d 1228, 1232 (9th Cir. 2011).[5] The Ninth Circuit clarified that a reviewing court may consider the new evidence "to determine whether, in

---

[4] The Commissioner did not address this specific issue in its Cross-Motion and Opposition to Plaintiff's motion. The Commissioner did not file a Reply to Plaintiff's Opposition to the Cross-Motion. The deadline to file a Reply was November 7, 2011.

[5] The Ninth Circuit does not specify the source of the internal quotation, but it appears to be quoting from a brief submitted by the Commissioner.

light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Id.*

District courts within the Ninth Circuit have also applied *Gomez* to a treating physicians' report. For example, in *Shaner v. Astrue*; 2010 WL 5789151 at *10  (D. Or. Dec. 28, 2010) the court relied upon *Gomez* in holding that the Appeals Council is not required to make any particular finding with respect to new evidence in the form of a treating physician's report obtained after the ALJ's decision.  Similarly, in *Allison v. Apfel,* 2000 WL 1141036, at *6 (D. Or. Aug. 7, 2000) the court rejected the argument that the Appeals Council erred in failing to provide specific reasons for rejecting new evidence from a treating physician, stating: "This argument is without merit as the Ninth Circuit in *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir.1996), unequivocally held that the Appeals Council need not provide particular evidentiary findings when it rejects evidence submitted subsequent to the ALJ's decision without accepting review)[6]; *see also Jakobs v. Astrue*, 2010 WL 3636236 at *9  (C. D. Cal. Sept. 15, 2010)(Appeals Council not required to make any particular evidentiary findings regarding report of treating physician.); *Garrant v. Astrue*, 2010 WL 1980296 (W.D. Wash April 12, 2010)(Appeals Council need not provide particular evidentiary findings when it rejects evidence submitted after the ALJ's decision, but evidence is part of the record and can be the basis for remand if there is a reasonable possibility that the evidence would change the ALJ's decision.)

The Ninth Circuit, however, has not been entirely consistent on this issue.  In *Buzzard v. Shalala*, 1994 WL 475859 at * 2 (9th Cir. Sept. 1, 1994) the Ninth Circuit held: "It is well-established in this Circuit not only that the ALJ must give specific, legitimate reasons when it rejects the opinion of a treating physician as to a claimant's physical impairments, but that the Appeals Council is also required to state 'specific, legitimate reasons' for rejecting the opinion of a treating physician when that opinion is new and material evidence).  Despite claiming the rule is "well-established" the Buzzard court relied solely on out of circuit authority and  *Ramirez v. Shalala*, 8 F.3d 1449, 1453-54 (9th Cir. 1993).  In *Ramirez*, the Ninth Circuit found error: "Neither the ALJ nor the Appeals Council gave *any* reason – let

---

[6] *Shaner* is possibly distinguishable in that the evidence in question was created after the ALJ's decision issued.  In *Allison* the decision does not specify whether the evidence was created, obtained, or simply submitted after the ALJ's decision.

alone a 'specific, legitimate' reason based on substantial evidence – for disregarding" the treating physician's diagnosis." Ramirez, however, does not state that the Appeals Council must give a specific and legitimate reason for disregarding the treating physician's opinion.

Because the most direct and recent statement from the Ninth Circuit is contained in *Taylor*, this court will follow that decision. As recognized in *Taylor, Gomez* precludes a court from establishing a rule requiring the Appeals Council to make detailed findings when presented with new evidence. This also comports with the role of the reviewing court. Because the court cannot affirm or reverse the Appeals Council's decision, it makes sense that the court would not evaluate whether the Appeals Council made sufficient findings. In contrast, the court's responsibility to determine whether the record as a whole (including newly submitted evidence) is supported by substantial evidence requires no evaluation of whether the Appeals Council made sufficient findings as to newly submitted evidence.

####          d.     The Newly Submitted Evidence Does not Render the ALJ's Decision Against the Weight of Evidence

Here, the entire record does not lead to the conclusion that the new Dr. Alleyne report renders the ALJ's conclusion against the weight of the evidence. The February 1, 2008 letter from Dr. Alleyne is cursory and does not reveal what clinical testing, if any, supports Dr. Alleynes' findings. In contrast, the ALJ relied on the opinions of examining orthopedic surgeon, Dr. Sabourin, as well as reviewing doctor Albert W. Lizarraras. The ALJ considered Dr. Alleyne's July 17, 2008 report.[7] (ALJ Decision, AR 23, Ex. 16F, AR 296). In that report, Dr. Alleyne notes that Plaintiff's osteometallic fusion "appears to be incorporating quite nicely". [AR 23, 397.] That same report notes that claimant was reporting numbness and tingling in her hands, but had a motor strength at 5/5. The ALJ also considered the testimony of Dr. Yu, who reviewed the records and opined that claimant could perform a light level of exertion until February 2008 and after that only a sedentary level. He testified that Plaintiff could climb, bend occasionally, and could perform fingering and handling frequently. [AR 22, 51-53.] The ALJ also had the report of Dr. Lizarraras, reviewing neurologist, who opined that Plaintiff could lift and/or carry twenty pounds occasionally, ten pounds frequently; sit, stand and/or work for six hours in an eight hour

---

[7]The ALJ incorrectly identifies the date of this report as July 29, 2008, but this error is harmless.

workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds. [AR 350-51.] The report of Dr. Lizarraras also constitute substantial evidence in support of the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 20020)("opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.") Thus, the new evidence does not render the ALJ's decision against the weight of the evidence.

### 2. Rejection of Plaintiff's Testimony

Where the claimant has proven a combination of impairments that would result in some degree of limitation in her activity, and there is no evidence of malingering, the Commissioner must provide "clear and convincing" evidence in order to disregard the claimant's testimony on subjective symptoms. *Lester*, 81 F.3d at 834. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (citations omitted.) The Commissioner does not dispute that claimant has proven impairments which could reasonably be expected to produce pain and fatigue. Additionally, the Commissioner does not assert any evidence of malingering. Plaintiff argues that the ALJ failed to give clear and convincing reasons for disregarding her testimony as to the limitations caused by her pain and fatigue. The Commissioner argues that the ALJ did provide clear and convincing reasons.

The ALJ properly considered Plaintiff's daily activities. *See* 20 C.F.R. § 404.1529(c). The ALJ noted Plaintiff's testimony that she was able to care for her personal needs, shop in stores and visit with her sister daily. (AR 23.) This constitutes clear and convincing evidence for disregarding the Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

The ALJ also properly noted that the objective medical evidence contradicted Plaintiff's testimony. The ALJ relied upon Dr. Sabourin and Dr. Yu's opinions that Plaintiff could continue to work at the sedentary level. *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995)(finding doctor's opinion that plaintiff could perform sedentary work a specific and valid reason for rejecting testimony). Dr. Yu downgraded Plaintiff's ability to work from light to sedentary based, in part, on her subjective complaints of pain and that her condition worsened after surgery. [AR 52.] Plaintiff argues that Dr.

Yu's acceptance of Plaintiff's subjective complaints, requires the court to find that Plaintiff is entitled to benefits. [Mot. at 14.] Thus, Plaintiff argues that the court should rely on Dr. Yu's acceptance of Plaintiff's complaints, but reject his conclusion that Plaintiff could perform sedentary work. Plaintiff offers no support for this odd proposition and the Court is not persuaded by it.

Additionally, the ALJ relied upon the February 25, 2008 report of Dr. Alleyne, which reported that Plaintiff " states she has been doing quite well, having no pain in her arms and only minimal discomfort into her neck posteriorly. She has been taking over-the counter Tylenol about 2 a day and is very pleased with her outcome." (AR 570.) On April 17, 2008, Dr. Alleyne reported that Plaintiff "states she is doing quite well having only minimal discomfort into her neck and some occasional tingling in her right hand." (AR 564.) The ALJ also relied upon a Dr. Alleyne report dated July 17, 2008, in which Dr. Alleyne states the osteometallic fusion "appears to be incorporating quite nicely." [AR 397.] Medical reports showing that the pain is under control constitute specific, clear and convincing evidence to disregard reports of pain. *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003.)[8] Plaintiff argues she informed Dr. Alleyene in this report that she was worse than before the surgery and that the success of the integration should not detract from Plaintiff's subjective complaints. [Mot. at 14.] Plaintiff may have intended to show that the ALJ erred in not crediting this report. The July 17, 2008 report, however, contains no indication that Plaintiff stated she was worse than before surgery. [AR 396-97.]

Plaintiff also argues that the ALJ improperly relied upon her ability to care for her personal needs because he did not link the testimony about daily activities to the finding that Plaintiff's pain testimony was not credible. [Reply at 6, *citing Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).] The ALJ, however, specifically linked the daily activities testimony to his finding that:

> claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
> ...
> However to the extent that it is alleged that the claimant cannot perform work at the limited range of light exertion recited above, the Administrative Law Judge finds those

---

[8] Although this same report does reflect that Plaintiff stated she could not work due to chronic fatigue, the ALJ was entitled to weigh her credibility in light of the conflict in her reporting of pain to her doctor with the pain she reported in her testimony.

> allegations are not totally credible for the following clear and convincing reasons. <u>First</u> the claimant's activities of daily living include caring for her personal needs, shopping, in stores and via by [sic] computer, and visiting with her sister daily. The clamant did not need reminders for appointments. The claimant could manage her own money.

[AR 23.] Accordingly, the ALJ appropriately linked Plaintiff's daily activities to his finding that Plaintiff's subjective complaints were not credible.

## IV.    CONCLUSION

Based on a review of the record and consideration of the briefs submitted, the Court **RECOMMENDS** that Defendant's Cross-Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**.

The court submits this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than <u>*February 29, 2012*</u> any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 7, 2012** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 14, 2012

*[signature: Nita L. Stormes]*

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court